IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KEISHA CHEESEMAN, | ) |
| | ) |
| PLAINTIFF, | ) CV NO.: |
| | ) |
| V. | ) |
| | ) |
| TELEPERFORMANCE | ) JURY TRIAL DEMANDED |
| BUSINESS SERVICES US, LLC., | ) |
| | ) |
| DEFENDANT. | ) |

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 215(a)(2) and (3) and 217 and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. § 1161 *et seq*. ("COBRA"), and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.

("ERISA). The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by COBRA and ERISA.

3. Plaintiff seeks supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) in regard to her claims of quantum merit.

## II. PARTIES

4. Plaintiff, Keisha Cheeseman (hereinafter "Plaintiff") is a resident of Calera, Shelby County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Northeastern Division.

5. Defendant Teleperformance Business Services US, LLC, (hereinafter "Defendant"), is a company registered and doing business in the State of Alabama. Therefore, this Court has personal jurisdiction over Defendant. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s).

## III. STATEMENT OF FACTS

6. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-5 above.

7. Defendant hired Plaintiff on or about October 20, 2020.

8. At all times relevant to this complaint, Defendant employed Plaintiff as a Customer Service Representative.

9. Defendant paid Plaintiff an hourly rate of $13.00.

10. Defendant initially assigned Plaintiff to work in its American Express Department.

11. Defendant later assigned Plaintiff to work in its Bank of America Department.

12. Defendant scheduled Plaintiff to undergo orientation for its Bank of America Department on April 23, 2021 for one hour, which she did.

13. Defendant assigned Plaintiff to undergo "Tech Check" for four hours on April 30, 2021, which she did.

14. Defendant failed to properly record Plaintiff's hours worked from April 23, 2021 through April 30, 2021, and instead only paid Plaintiff for 0.43 hours.

15. On May 7, 2021, Plaintiff notified Defendant that she had been paid improperly for the work she performed from April 23, 2021 through April 30, 2021.

16. Defendant remedied this incorrect pay.

17. Defendant initially scheduled Plaintiff to undergo additional training for its Bank of America Department from May 3, 2021 through May 7, 2021.

18. Defendant scheduled thirty (30) people to undergo training from May 3, 2021 through May 7, 2021.

19. Defendant uses a Virtual Private Network "VPN" for their servers.

20. Defendant issues each employee a unique code to login to the VPN which tracks their activity.

21. Defendant uses an internal system to record time worked, referred to as "CCMS."

22. Defendant requires its employees to log into CCMS each day to record their time worked.

23. Defendant compares the activity associated with each employee's VPN number and their CCMS record for payroll purposes.

24. During training, the trainer takes roll call and enters time worked into a Training Console Attendance Page.

25. The Payroll Department later downloads the Training Console Attendance Page into the CCMS time keeping system.

26. Defendant issued Plaintiff a network ID to log into CCMS.

27. Defendant uses a platform called Synergy Web which allows its employees to login and receive calls from consumers.

28. An employee's ability to login to the VPN and CCMS does not affect their ability to login to Synergy Web.

29. Defendant does not record its employees' time worked based on their activity in Synergy Web.

30. Defendant uses a Bridge Line to connect its employees in a conference call.

31. Defendant uses Microsoft Teams to connect its employees with each other as an instant messaging platform.

32. During training, Defendant required its trainees, including Plaintiff, to call into the Bridge Line and to sign into Microsoft Teams.

33. During the week of May 3, 2021, Defendant experienced an error with their VPN that prevented its training class from logging into the servers to perform virtual classroom training.

34. During this time, Defendant required the trainees to stay on the Bridge Line and Teams.

35. Defendant employs April Frederick.

36. Defendant assigned Frederick as the trainer over Plaintiff's new hire training.

37. Frederick called roll to monitor attendance two or three times a day on Bridge Line.

38. From May 3, 2021 through May 7, 2021, in addition to staying on the Bridge Line and Microsoft Teams, Plaintiff called Defendant's Technical Support Department.

39. With the assistance of Defendant's Technical Support Department, Plaintiff worked to remedy the errors by re-downloading and installing software, re-establishing her VPN for Bank of America, and restoring her access to Synergy Web.

40. During the week of May 3, 2021, Plaintiff performed forty hours of work for Defendant as described above.

41. For the week of May 3, 2021, Frederick manually added Plaintiff's time to the Training Console Attendance Page.

42. Defendant's policy prohibits employees from accepting calls from customers if they have not successfully completed all assigned training modules.

43. The Bank of America Department requires an 85% pass rate on all training modules.

44. Due to the VPN errors in Defendant's system, Plaintiff could not complete the training modules necessary for Bank of America by May 7, 2021.

45. Defendant extended Plaintiff's training until May 14, 2021.

46. On May 10, 2021, Defendant experienced a technical issue that did not allow any of its employees to use their network logins for CCMS.

47. Most of Defendant's employees were able to login to CCMS on May 11, 2021.

48. Plaintiff could not login to CCMS throughout her employment in the Bank of America Department.

49. Plaintiff informed Defendant's Technical Support Department that she was unable to login to CCMS.

50. Plaintiff informed Frederick that she was unable to login to CCMS.

51. From May 10, 2021 through May 14, 2021, Plaintiff completed Bank of America's training modules, including modules on federal PPE loan regulations, Bank of America's harassment policies, Bank of America's communication policies, and, Bank of America's conflicts of interest procedures.

52. From May 10, 2021 through May 14, 2021, Plaintiff completed forty hours of training modules.

53. After completing Defendant's virtual classroom training and modules, Defendant scheduled Plaintiff to enter into Production on May 17, 2021.

54. On May 17, 2021, Plaintiff received a call from Defendant's Retention Team in Human Resources.

55. Defendant's Retention Team informed Plaintiff that she had not been checked into CCMS since May 7, 2021, and that she was at risk of her employment being terminated.

56. On May 17, 2021, Plaintiff informed Frederick that Defendant's Retention Team had just called her.

57. Frederick told Plaintiff to disregard the call because "we know you have no access to timeclock."

58. Plaintiff informed Frederick that the Retention Team called because Plaintiff's time worked from May 10, 2021 through May 14, 2021 had not been manually entered.

59. Plaintiff stated that because her time had not been manually entered, her pay would be incorrect on May 22, 2021.

60. Frederick informed Plaintiff that "Claudia is working on it."

61. At all times relevant to this Complaint, Defendant employed Claudia Cervantes.

62. At all times relevant to this Complaint, Defendant employed Janine Rodriquez in its Human Resources Department.

63. At all times relevant to this Complaint, Defendant employed Kristine Lopez in its Human Resources Department.

64. On May 18, 2021, Plaintiff notified Rodriquez and Lopez via email that Defendant had not rendered the correct pay.

65. On May 18, 2021, Plaintiff notified Rodriquez and Lopez via email that she was unable to clock into CCMS.

66. On May 18, 2021, Plaintiff notified Rodriquez and Lopez, via email, that Frederick and Cervantes were supposed to manually update Plaintiff's hours worked but had failed to do so.

67. On May 18, 2021, Cervantes stated that she was "putting in a ticket to fix that."

68. On May 18, 2021, Plaintiff asked Rodriquez and Lopez, via email, if she was expected to continue to take calls without clocking in.

69. Neither Rodriquez nor Lopez responded to this inquiry.

70. At all times relevant to this Complaint, Defendant employed Adam Merrell as a supervisor.

71. On May 20, 2021, Merrell texted Plaintiff and stated that she had been added to his team.

72. On May 20, 2021, Plaintiff informed Merrell that she had been unable to login to CCMS since May 10, 2021.

73. On May 20, 2021, Plaintiff informed Merrell that Frederick had failed to update her time.

74. On May 20, 2021, Plaintiff forwarded Merrell all of her communications with Frederick, Rodriquez, and Lopez, along with the errors that she was receiving.

75. On May 20, 2021, Merrell requested that Plaintiff continue to work and answer calls despite not being able to clock in because "hours can and will be corrected as soon as [Plaintiff's] ccms profile is viewable correctly . . . ."

76. Plaintiff expressed concern to Merrell that because her time had not been manually entered from May 10, 2021 through May 14, 2021 that any other hours she continued to work would not be manually entered either.

77. Additionally, Plaintiff informed Merrell that, per labor law, "I should have the ability to clock in first before signing into any software. It is clear that I do not have the ability to clock in or clock out."

78. Due to Plaintiff's insistence on being able to clock in before performing work so that she may be paid, Merrell placed Plaintiff on Voluntary Time Off for an unspecified amount of time.

79. Merrell also informed Plaintiff that Defendant would not pay Plaintiff from May 10, 2021 through May 14, 2021 until her CCMS profile was "sorted".

80. At all times relevant to this Complaint. Defendant employed Courtney Gast in its Human Resources Department.

81. On May 21, 2021, Plaintiff sent an e-mail to Rodriguez and Courtney Gast regarding her inability to clock in.

82. Plaintiff did not receive a response to her May 21, 2021, email from Rodriguez, Gast, or any of Defendant's other Human Resources employees.

83. Defendant did not contact Plaintiff regarding her inability to log into CCMS between May 21, 2021 and June 2, 2021.

84. On June 3, 2021, Merrell texted Plaintiff and asked if she wanted Defendant to continue to work on her CCMS profile.

85. Plaintiff informed Merrell that she had still not been paid for May 10-14, 2021.

86. Plaintiff informed Merrell that she intended to reach out to the Department of Labor for non-payment.

87. **On June 18, 2021**, Defendant's Asset Recovery team sent Plaintiff an email, which stated that "Pursuant to the equipment acknowledgement agreement you signed with Teleperformance, you are required to return all company equipment upon termination of your employment. As of the date of this letter, there is no record of your return of the following equipment . . . ."[1]

88. Defendant alleged in a collateral, non-dispositive proceeding, that it terminated Cheeseman's employment **on June 10, 2021**;[2] one week after Plaintiff informed Merrell she intended to report Defendant to the Department of Labor.

---

[1] On February 10, 2022, Plaintiff returned Defendant's equipment with a preservation letter attached.

[2] Although Defendant made the decision to terminate Plaintiff on June 10, 2021, Plaintiff did not become aware that Defendant had terminated her employment until she received an email on June 18, 2021 from Defendant's Asset Recovery Department.

89. Defendant terminated Plaintiff for the stated reason of missing four consecutive shifts and backdated the termination to May 26, 2021.[3]

90. At the time of Plaintiff's termination, Defendant had not corrected Plaintiff's CCMS login.

91. At the time of Plaintiff's termination, Defendant had not removed Plaintiff from her Voluntary Time Off Status.

92. At the time of the filing of this Complaint, Defendant has failed to pay Plaintiff for any hours worked from May 10, 2021 through May 14, 2021.

93. After Defendant terminated Plaintiff, Plaintiff received no COBRA notice from Defendant, so as to continue her health benefits.

94. At all times during Plaintiff's employment and after Defendant's decision to terminate Plaintiff's employment, Plaintiff has resided at the same address.

## IV. COUNT ONE – FLSA – UNPAID MINIMUM WAGE

95. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1- 94 above.

96. During the two years preceding the filing of this Complaint, Defendant was, and currently is, an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. §203(r)(1).

---

[3] Defendant alleged that May 26, 2021, was Plaintiff's third consecutive no call/no show, however, Defendant placed Plaintiff on Voluntary Time Off Status on May 20, 2021.

97. During the two years preceding the filing of this Complaint, Defendant was, and currently is, an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. §203(s)(1).

98. On behalf of Defendant, Plaintiff used the instrumentalities of interstate commerce while working, including making and receiving phone calls to and from customers and other employees in states outside of Alabama and using the internet to send and receive email communications.

99. Defendant's gross annual volume of revenue for 2021 exceeded $500,000.

100. At all times relevant to this action, Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

101. During the two years preceding this Complaint, Plaintiff was an employee of Defendant as defined by 29 U.S.C. § 203(e)(1).

102. During the two years preceding the filing of this Complaint, Defendant failed to record Plaintiff's hours during a given work week on multiple occasions, such that Defendant failed to comply with 29 U.S.C. § 211 and 29 C.F.R. § 516.2 for the work week beginning May 10, 2021.

103. During the two years preceding the filing of this Complaint, Defendant failed to pay Plaintiff on one or more weeks in which Defendant received the benefits of Plaintiff's labor.

104. During the work week beginning May 10, 2021, Plaintiff completed forty hours of training.

105. Defendant failed to compensate Plaintiff for all hours worked from May 10, 2021 through May 14, 2021.

106. Because of Defendant's willful and intentional violation of the FLSA, Plaintiff has been damaged, suffering loss of the federally mandated minimum wage for all the hours she worked.

107. As a result of Defendant's pay practices, Plaintiff seeks recovery of her wages, such that she be paid the minimum wage for all hours worked.

## V.   COUNT TWO – FLSA RETALIATION – TERMINATION

108. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-107 above.

109. On May 17, 2021, Plaintiff informed Frederick that the Retention Team called because Plaintiff's time from May 10, 2021 through May 14, 2021, had not been manually entered and that Defendant's May 22, 2021 paycheck would reflect incorrect time worked.

110. On May 18, 2021, Plaintiff asked Rodriquez and Lopez, via email, if she was expected to continue to take calls without clocking in.

111. Neither Rodriquez nor Lopez responded to this inquiry.

112. On May 20, 2021, Merrell requested that Plaintiff continue to work and answer calls despite not being able to clock in because "hours can and will be corrected as soon as [Plaintiff's] ccms profile is viewable correctly."

113. Plaintiff expressed concern to Merrell that because her time had not been manually entered from May 10, 2021 through May 14, 2021, and that any other hours she continued to work also would not be manually entered.

114. Additionally, Plaintiff informed Merrell that, per labor law, "I should have the ability to clock in first before signing into any software. It is clear that I do not have the ability to clock in or clock out."

115. Due to Plaintiff's insistence on being able to clock-in before performing work so that she may be paid, Merrell placed Plaintiff on Voluntary Time Off for an unspecified amount of time.

116. Merrell also informed Plaintiff that Defendant would not pay Plaintiff for May 10, 2021 through May 14, 2021, until her CCMS profile was "sorted".

117. On May 21, 2021, Plaintiff sent an e-mail to Rodriguez and Courtney Gast regarding her inability to clock-in.

118. Plaintiff did not receive a response to her May 21, 2021 email from Rodriguez, Gast, or any of Defendant's other Human Resources employees.

119. Plaintiff did not receive any contact regarding her inability to log into CCMS from Defendant between May 21, 2021 and June 2, 2021.

120. On June 3, 2021, Merrell texted Plaintiff and asked if she wanted Defendant to continue to work on her CCMS profile.

121. Plaintiff informed Merrell that she had still not been paid for May 10, 2021 through May 14, 2021.

122. Plaintiff informed Merrell that she intended to reach out to the Department of Labor for non-payment.

123. **On June 18, 2021**, Defendant's Asset Recovery team sent Plaintiff an email, which stated that "Pursuant to the equipment acknowledgement agreement you signed with Teleperformance, you are required to return all company equipment upon termination of your employment. As of the date of this letter, there is no record of your return of the following equipment . . .."[4]

124. In a collateral, non-dispositive proceeding, that it terminated Cheeseman's employment **on June 10, 2021**;[5] one week after Plaintiff informed Merrell she intended to report Defendant to the Department of Labor.

125. Defendant terminated Plaintiff for the stated reason of missing four consecutive shifts and backdated the termination date to May 26, 2021[6].

126. At the time of Plaintiff's termination, Defendant had not corrected Plaintiff's CCMS login.

---

[4] See Footnote 1.
[5] See Footnote 2.
[6] See Footnote 3.

127. At the time of Plaintiff's termination, Defendant had not removed Plaintiff from Voluntary Time Off.

128. Defendant intentionally violated the FLSA by failing to pay Plaintiff for any hours worked from May 10, 2021 through May 14, 2021.

129. In violation of the FLSA, Defendant's decision to terminate Plaintiff was motivated, in whole or in part, by Plaintiff's protected activity, her internal complaints regarding her pay, and her stated intent to report Defendant's failure to pay her properly to the United States Department of Labor.

130. Because of Defendant's willful and intentional violation of the FLSA, Plaintiff has suffered loss of pay, benefits, and other compensatory damages.

## VI. COUNT THREE – QUANTUM MERIT – WORK & LABOR DONE

131. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-107 above.

132. Defendant set Plaintiff's hourly wage at $13.00 per hour.

133. Plaintiff expected Defendant to compensate Plaintiff for all hours worked at the agreed upon rate of $13.00 per hour.

134. Defendant failed to compensate Plaintiff for all hours worked from May 10, 2021 through May 14, 2021, at the agreed upon rate of $13.00 per hour.

135. As a result of Defendant's failure to compensate Plaintiff at the agreed upon rate for all hours worked, Defendant has caused Plaintiff to suffer loss of pay.

## VII.   COUNT FOUR – COBRA AND ERISA VIOLATIONS

136.   Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-94 above.

137.   Defendant is an employer as defined by 29 U.S.C. § 1002(5).

138.   At all times during Plaintiff's employment and after Defendant's decision to terminate Plaintiff's employment, Defendant has employed more than twenty (20) employees.

139.   At all times during Plaintiff's employment and after Defendant's decision to terminate Plaintiff's employment, Defendant has been a plan sponsor of a group health insurance plan.

140.   Beginning in February 2021, Plaintiff participated in Defendant's group health insurance plan.

141.   After Defendant terminated Plaintiff's employment, Defendant failed to give proper written notice to Plaintiff of her COBRA rights and the cancellation of her insurance coverage.

142.   At all times during Plaintiff's employment and after Defendant's decision to terminate Plaintiff's employment, Plaintiff has resided at the same address.

143. Defendant's failure to provide Plaintiff with proper written notice of her COBRA rights and the cancellation of her insurance coverage caused Plaintiff to be without insurance.

144. Defendant terminated Plaintiff's group health insurance plan on June 10, 2021.

145. Plaintiff could not obtain health insurance until August 1, 2021, during open enrollment.

146. Plaintiff seeks legal penalties, costs and taxes up to maximum allowed by law, including, but not limited to, prejudgment interest, attorney fees, costs and any and all such other relief this Court or the trier of fact may assess.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. The Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in the Complaint;

B. This Court award Plaintiff the amount of her back pay, plus an additional equal amount as liquidated damages; front pay, compensatory damages, nominal damages; and special damages;

C. This Court award Plaintiff the legal penalties, including costs and taxes, up to the maximum allowed by law pursuant to COBRA and ERISA;

D.  That Plaintiff be granted judgment against Defendant for all reasonable attorneys' fees, costs, disbursements and interest; and

E.  For such other and further relief as this Court deems equitable, proper and just.

                                                Allen D. Arnold

                                                Whitney Morgan

Of Counsel:

Allen D. Arnold LLC
6 Office Park Circle, Suite 209
Birmingham, AL 35223
T: 205.252.1550 F: 205.469.7163
ada@allenarnoldlaw.com
whitney@ada@allenarnoldlaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

                                                OF COUNSEL

**DEFENDANT'S ADDRESS:**

Teleperformance Business Services US, LLC.
CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104